IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE ROMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19-cv-07271 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| ROB JEFFREYS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Roman brings this action against Illinois Department of Corrections ("IDOC") defendants Lieutenant D. Williams, Sergeant Donald Thomas, and Mental Health Specialist Beth Hart pursuant to 42 U.S.C. §1983, alleging, among other things, that defendants violated his Eighth Amendment rights by subjecting him to excessive force. Currently before the Court is plaintiff's opposed motion for leave to file a second amended complaint and add party defendants. (Dckt. #131). For the following reasons, plaintiff's motion is granted in part and denied in part.

I. **BACKGROUND**

On July 2, 2019, while incarcerated at Stateville Correctional Center ("Stateville"), plaintiff alleges that: he was placed in a filthy cell in Stateville's Health Care Unit; he flushed his toilet and caused it to overflow to protest the conditions in his cell; and defendants thereafter maced him, roughly threw him to the ground, and handcuffed him.[1] (Dckt. #19 at 2–3). Plaintiff exhausted the grievance process related to the July 2019 events on September 19, 2019 and

---

[1] At the time he filed his original complaint on November 12, 2019, plaintiff was incarcerated at Pontiac Correctional Center. (Dckt. #1 at 2, #19 at 2).

1

approximately two months later, on November 9, 2019, plaintiff filed his initial complaint with this Court. (Dckt. #1, #134 at 7). In his complaint, plaintiff raised various federal and state-law claims against several defendants employed both by IDOC and Wexford Health Services,[2] alleging that corrections officers violated his constitutional rights when they responded to his protest by entering his cell, macing him, throwing him to the ground, and forcibly restraining him. (Dckt. #1 at 5–6). On December 8, 2020, plaintiff filed an amended complaint, which is a typed version of plaintiff's initial, hand-written, complaint. (Dckt. ##17–19).

Plaintiff thereafter issued summonses for defendants, including one for defendant Lt. D. Williams. On January 27, 2021, the waiver of service of summons form issued to Lt. D. Williams was signed and returned by Lt. Donald Williams. (Dckt. #34). On March 23, 2021, counsel from the Office of the Illinois Attorney General ("OAG") entered an appearance on behalf of the IDOC defendants (including Lt. Donald Williams), and filed an unopposed motion for extension of time to file a responsive pleading. (Dckt. #49, #51). In his motion, counsel indicated that he had recently rejoined the OAG and was newly assigned to this matter, and therefore needed additional time to confer with the IDOC defendants and review the relevant paperwork. (Dckt. #49). The Court granted counsel's request. (Dckt. #50).

Nearly one month later, on April 20, 2021, counsel for the IDOC defendants requested a second extension of time to file a responsive pleading. (Dckt. #54). This time, counsel stated that the OAG had been experiencing significant network issues which impacted his ability to

---

[2] Plaintiff voluntarily dismissed Wexford as a defendant in this matter on September 20, 2023. (Dckt. #122). The IDOC defendants named in plaintiff's original complaint were Rob Jeffreys, Sherwin Miles, Beth Hart, Donald Thomas, and Donald Williams. Plaintiff voluntarily dismissed Jeffreys and Miles as defendants in this matter on July 15, 2021. (Dckt. #69).

access the relevant case file and investigate plaintiff's allegations against the IDOC defendants. (*Id.*). The Court granted counsel's second request for an extension. (Dckt. #55).

One month later, on May 20, 2021, counsel for the IDOC defendants filed a third request for extension of time to answer or otherwise plead. (Dckt. #58). Counsel explained that the OAG continued to experience significant network issues, and that he required additional time to investigate plaintiff's allegations against the IDOC defendants and obtain information necessary to prepare a responsive pleading. (*Id.*). The Court granted counsel's third request for an extension of time. (Dckt. #59).

On June 21, 2021, Donald Williams filed an answer to the amended complaint.[3] (Dckt. #62). In that answer, Donald Williams admitted he was a correctional officer at Stateville and was on duty at all times relevant to plaintiff's amended complaint. (*Id.* at 2). Donald Williams further admitted that he appeared at the Stateville Health Care Unit cell on July 2, 2019 and ordered plaintiff to stop flushing the toilet and to submit to mechanical restraint. (*Id.* at 5).

The parties then proceeded with discovery. (Dckt. #68). On October 29, 2021, the Court issued an order indicating that the deadline for amended pleadings was January 31, 2022. (Dckt. #73). Following this order, the parties continued to engage in discovery, which included participating in the late-2022 and early-2023 depositions of several correctional officers that worked at Stateville at the time of the incident alleged in plaintiff's amended complaint. (Dckt. #134 at 8–9).

On April 26, 2023, the Court entered an order stating that there would be "no amendment to the pleadings without leave of Court." (Dckt. #116). Fact discovery closed approximately a

---

[3] Defendants Hart and Thomas joined this answer. (Dckt. #62). Defendants Jeffreys and Miles filed a motion to dismiss. (Dckt. #60).

month later, in May 2023, (Dckt. #116, #119), and expert discovery closed thereafter on October 31, 2023. (Dckt. #121).

On October 31, 2023, the parties filed a joint status report with this Court wherein plaintiff indicated that he intended to file a motion to amend his complaint to add defendant Lt. *DeWayne* Williams (who confirmed at his deposition that he was the reporting officer involved in the July 2, 2019 incident) and to dismiss Lt. *Donald* Williams. (Dckt. #127 at 1). Plaintiff subsequently filed the instant motion on November 30, 2023, seeking leave to file his second amended complaint ("SAC" or "amended pleading"), which he attached to his motion. (Dckt. #131, #131-1). In support of his motion, plaintiff attached copies of various reports that IDOC personnel prepared in connection with the July 2, 2019 incident, including:

a. A July 3, 2019 incident report that was signed by Lt. D. Williams, (Dckt. #135-1 at 2–3). In his report, Lt. Williams, who identified Lt. Carr and Officer Taylor as staff involved, stated that he entered the Health Care Unit to assist Lt. Carr with a situation concerning inmate flooding of the unit. (*Id.* at 2). Lt. Williams arrived at plaintiff's cell and asked him what was going on. (*Id.*). After plaintiff disobeyed his order to stop flooding his cell and to step forward to his chuckhole to be secured, Lt. Williams sprayed plaintiff with O.C.[4] spray and instructed him to face the wall. (*Id.* at 3). Lts. Williams and Carr then entered plaintiff's cell and cuffed him. (*Id.*). Lt. Williams checked "yes" next to the questions of "were restraints/force used" and "were chemical agents or OC used" on the report form (*Id.*);

b. A second July 3, 2019 incident report was signed by Officer Taylor. (*Id.* at 4). Officer Taylor identified Lt. D. Williams with ID #12878 as being one of the staff involved in the incident. (*Id.*). Officer Taylor stated that he notified Lt. Williams and Sgt. Johnson that plaintiff was flooding his cell (*Id.*);

c. An offender disciplinary report that was signed by Lt. D. Williams, who also included his ID #12878, on July 2, 2019. (*Id.* at 5). In this report, Lt. D. Williams reiterated the account that he placed in his July 3 incident report (*Id.*);

d. A third July 3, 2019 incident report that was typed by Major S. Brown and identified Lt. D. Williams as the staff involved. (*Id.* at 7). Major Brown's report mirrored the account stated in Lt. Williams' July 3, 2019 incident report (*Id.*); and

---

[4] "O.C." stands for oleoresin capsicum, often referred to as "pepper spray."

    e.  A typewritten July 16, 2019 disciplinary disposition for plaintiff, who was charged and pled guilty to disobeying a direct order essential to safety, was signed by Lt. Charles Best. (Dckt. #135-1, at 6). Lt. Best, who interviewed witnesses to the July 2, 2019 incident, identified the "incident officer" as "Williams, DeWayne E." and described him throughout the narrative as Lt. Williams. (*Id.*)

Plaintiff states that he learned during the course of discovery that several other IDOC officers who were not named in his amended complaint were involved in, or witness to, the July 2, 2019 incident. (Dckt. #131 at 2). Plaintiff now seeks leave to file the SAC, which includes proposed new defendants DeWayne Williams, Kenyon Carr, Nate Finch, Sergeant Johnson, and Anthony Taylor[5] and drops current defendants Donald Williams and Beth Hart.[6] The depositions for the five prospective defendants have been completed. (*Id.*).

## II.    LEGAL STANDARD

Courts "freely" give leave to file an amended complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), and grant amendments liberally, "based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations." *McDaniel v. Loyola Univ. Medical Ctr.*, 317 F.R.D. 72, 76 (N.D.Ill. 2016), *quoting Olech v. Village of Willowbrook*, 138 F.Supp.2d 1036, 1040 (N.D.Ill. 2000). Courts have broad discretion to grant leave to file an amended pleading "in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

---

[5] Plaintiff's proposed SAC also included a second count against Lt. Charles Best alleging violation of his due process rights. (Dckt. #131-1 at 6–7). However, in his reply, plaintiff withdrew his request to amend with respect to this claim and Lt. Best. (Dckt. #135 at 5 n.2). Accordingly, plaintiff's motion for leave to amend with respect to Lt. Best is denied.

[6] Plaintiff also lists current defendant Donald Thomas in the caption and subheading of his proposed SAC but there are no allegations or claims specific to Thomas in the amended pleading and the Court presumes that plaintiff intends to also drop him as a defendant.

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004), *quoting Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (court's decision to grant or deny leave left to its "sound discretion").

## III. ANALYSIS

As explained above, plaintiff's proposed amended pleading substitutes five new defendants (DeWayne Williams, Kenyon Carr, Nate Finch, Sergeant Johnson, and Anthony Taylor) for the defendants presently named in this case. (Dckt. #131 at 1–2). Moreover, plaintiff proposes to streamline his case by limiting his SAC to a single Eighth Amendment count lodged against all defendants. (Dckt. #131-1). In particular, plaintiff alleges that Lts. DeWayne Williams and Carr used excessive force against him during the incident on July 2, 2019, and that Finch, Taylor, and Johnson observed that use of excessive force but failed to intervene to prevent it. (Dckt. #131-1 at 1).

Defendants object to plaintiff's motion and argue that plaintiff should not be granted leave to amend because: (1) plaintiff's motion was untimely filed; and (2) his proposed amendment is futile because his Eighth Amendment claim against these new defendants is barred by the statute of limitations. (Dckt. #134 at 3). Plaintiff responds that his proposed SAC comports with the interests of justice and that leave should be granted under the liberal pleading standards of Rule 15(a)(2).[7] (Dckt. #131 at 2). The Court agrees, in part, with both sides.

---

[7] Plaintiff casts his motion as one to amend and "add" defendants. But accepting his proposed amendment would mean that all previously named defendants would be dismissed from this action because the SAC would "supersede all previous complaints, control the case from that point forward, and wipe away prior pleadings." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014), *quoting Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (cleaned up).

### A. Plaintiff Properly Sought Leave of Court to File His SAC Under the Standards of Rule 15(a)(2).

To begin, defendants argue that the Court's October 29, 2021 order set January 31, 2022 as the deadline for all amended pleadings, rendering plaintiff's proposed SAC untimely. According to defendants, plaintiff's filing must therefore be subjected to the "heightened good-cause standard" of Federal Rule of Civil Procedure 16(b)(4), rather than the liberal standard under Rule 15(a)(2). (Dckt. #134 at 4–5) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2019) (when an amended complaint is filed after the deadline established by a district court, the court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied.")).

Defendants' argument on this point, however, overlooks the Court's April 26, 2023 order which states: "No amendment to the pleadings without leave of Court." (Dckt. #116). That order explicitly re-opened the door for amended pleadings, so long as the movant first sought leave of Court. Plaintiff has complied with the April 26, 2023 order by seeking leave of court prior to filing his SAC. As such, plaintiff's motion is timely and subject to Rule 15(a)(2), rather than the heightened good-cause standard set out in Rule 16(b)(4).

### B. Plaintiff Did Not Unduly Delay, Manifest Bad Faith, or Cause Prejudice to Defendants by Virtue of the Timing of His Motion Seeking Leave to Amend.

Defendants make much of the fact that plaintiff waited until after depositions were completed and fact discovery closed to file the instant motion. (Dckt. #134 at 5–6). But the Court does not find this delay to be dispositive. While plaintiff did not file his motion for leave to file the SAC until November 30, 2023, this time lag is far from the sort of undue delay that would justify denying his motion for leave to amend, particularly given that a portion (perhaps, a

7

good portion) of the delay in the progress of discovery has been attributable to defendants.[8]

Moreover, although fact discovery ended in May 2023, plaintiff did not sit on his hands, as defendants appear to suggest. The record is clear that the parties proceeded with expert discovery, and plaintiff raised his intention to file an amended pleading with the Court the day expert discovery closed.

In any event, as the Seventh Circuit has repeatedly noted, delay "would not be sufficient on its own" as a ground for denial of leave to amend. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Instead, "'delay must be coupled with some other reason. Typically, that is prejudice to the non-moving party.'" *Id.*, quoting *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (cleaned up). Here, there is no evidence that defendants will suffer any prejudice if plaintiff is allowed to file his SAC. Indeed, plaintiff has taken the deposition of each defendant he seeks to add, and neither party has indicated a desire to reopen discovery if the SAC is filed. Nor do plaintiff's actions create any whiff of bad faith.

### C. Plaintiff's Proposed Amendment is Not Futile With Respect to Lts. DeWayne Williams and Carr Because the Claims Alleged Against Them in the SAC Relate Back to His Complaint.

Defendants' principal objection is that plaintiff's effort to amend will be futile because his claims against the new defendants are time-barred. Plaintiff counters by asserting that the claims against the new defendants relate back to the filing of his complaint under Rule 15(c)(1). The pertinent dates are as follows. The two-year statute of limitations period on plaintiff's

---

[8] As plaintiff points out, defendants did not issue their Rule 26(a)(1) disclosures until May 11, 2022 (which was well over two years after plaintiff filed this lawsuit) and they did not produce documents in response to his request for production until July 20, 2022. (Dckt. #135 at 4). Moreover, the depositions of DeWayne Williams, Taylor, Carr, and Finch could not be completed until late 2022 and early 2023 because the witnesses were either unavailable or defense counsel was unable to more promptly schedule them for their depositions. (*Id.*).

underlying Section 1983 claim expired on September 19, 2021.[9] That was approximately 22 months *after* plaintiff filed his original complaint on November 9, 2019 and ten months after plaintiff filed his amended complaint on December 7, 2020, but over two years *before* plaintiff sought leave from this Court on November 30, 2023 to file his SAC. Because the statute of limitations has now lapsed with respect to the new defendants, the proposed amendment will be futile unless the claims asserted against them in the SAC relate back to the date plaintiff filed his initial complaint.

Under Rule 15(c)(1), an amendment adding a party to the complaint after the statute of limitations has run relates back to the timely filed complaint so long as:

(1) the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original complaint;

(2) within the period provided by Rule 4(m), the party added by amendment received such notice of the action that it will not be prejudiced in defending on the merits; and

(3) the added party knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021) (internal quotations and emphasis omitted). The Court further notes that the Seventh Circuit has emphasized the "broad scope to be given Rule 15(c)" based on the principle that "the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems." *Woods v. Indiana Univ.-Purdue Univ. at Indianapolis*, 996 F.2d 880, 883 (7th Cir. 1993) (cleaned up); *Mortensen v. Arrowood*, No. 1:23-CV-6150, 2024 WL 98422, at *3 (N.D.Ill. Jan. 9, 2024) (same).

---

[9] Defendants contend that plaintiff exhausted the grievance process related to the July 2, 2019 incident on September 19, 2019, at which point the two-year statute of limitations applicable to his claims began to run. (Dckt. #134 at 7). Plaintiff does not dispute this timeline.

In this case, defendants admit that the Eighth Amendment claims alleged in the SAC against Williams, Carr, Finch, Johnson, and Taylor (hereinafter, the "Proposed Defendants") are related to the July 2, 2019 events raised in plaintiff's amended complaint and, therefore, concede that the first prong of the relation-back inquiry is satisfied. (Dckt. #134 at 8). Defendants dispute, however, whether: (1) the Proposed Defendants received notice of this lawsuit within the period provided by Rule 4(m); and (2) whether they knew or should have known that the action would have been brought against them, but for a mistake concerning the proper party's identity, as required by prongs two and three of the relation-back inquiry, respectively. (*Id.* at 8–9). The Court addresses each of these arguments in turn.

### 1. Lts. DeWayne Williams and Carr Received Notice of This Lawsuit Sufficient to Satisfy the Second Prong of the Relation-Back Inquiry.

Rule 15(c)(1)(C) requires that the party to be brought in by amendment receive notice of the action within the time period provided by Rule 4(m) for serving the summons and complaint. Fed. R. Civ. P. 15(c)(1)(C). Defendants argue that the Proposed Defendants were not served within Rule 4(m)'s default 90-day period from the filing of the amended complaint (*i.e.*, within 90 days from December 7, 2020), and therefore did not receive proper notice for purposes of relation back. (Dckt. #134 at 8–10).

For purposes of Rule 15(c), however, "notice" does not require actual service of process on the party sought to be added. *See Norton v. International Harvester Co.*, 627 F.2d 18, 20–21 (7th Cir. 1980). Instead, "sufficient notice of the institution of the action" may be "formal or informal." *Id.* Under what is known as the "shared attorney" method of imputing notice, "the defendant to be added is deemed to have received timely notice of the plaintiff's claims because that person is currently being represented by the particular attorney who represents an originally named defendant." *Davenport v. Dovgin*, 545 Fed.Appx. 535, 539 (7th Cir. 2013) (citing

10

*Singletary v. Pa. Dep't of Corrs.*, 266 F.3d 186, 196–97 (3d Cir. 2001)). The "shared attorney" method of imputing notice is based on the notion that "when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Singletary*, 266 F.3d at 196.

"In deciding whether the shared attorney had the requisite knowledge, the appropriate inquiry is whether that attorney knew or should have known that the prospective defendants would be named." *Curry v. Campbell*, No. 06-CV-2841 DRH ETB, 2012 WL 1004894, at *4 (E.D.N.Y. Mar. 23, 2012) (cleaned up). The "fundamental issue . . . is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the [90-day] period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." *Singletary*, 266 F.3d at 196–97; *Lewis v. City of N.Y.*, No. 12-CV-2836, 2013 WL 6816615, at *5 (E.D.N.Y. Dec. 24, 2013) (constructive notice doctrine is applicable where "the attorneys had clear knowledge of the identity of the unidentified defendant, within the limitations period, such that it would be logical to assume that a reasonable attorney would either (1) inform his client of the prospective lawsuit or (2) take[] steps to begin preparing a defense.") (cleaned up).[10]

---

[10] Defendants argue that the relevant 90-day period for purposes of this inquiry is the 90-day period immediately following the date plaintiff filed his amended complaint (i.e., December 14, 2020 until March 7, 2021). (Dckt. #134 at 7). Defendants are incorrect. As the Seventh Circuit has explained, an amended complaint relates back under Federal Rule of Civil Procedure 15(c) if "the party received notice within [90 days] *after the limitations period ran*" on plaintiff's claim. *Woods*, 996 F.2d at 886 n. 8 (emphasis added). In other words, the Rule 4(m) period referenced in Rule 15(c) kicks in the day after the statute of limitations expires. Thus, the period within which the Proposed Defendants would have needed to have notice for purposes of Rule 15(c) ended on December 18, 2021, which is 90 days after September 19, 2021 – the date the statute of limitations on plaintiff's claims expired.

11

In this case, the threshold for the application of the shared attorney method of imputing notice has been met. The record shows that counsel from the OAG filed an appearance, sought three extensions to review the relevant records, and filed an answer to the amended complaint on behalf of the original IDOC defendants (including Lt. Donald Williams) by June 21, 2021 – nearly six months before the relevant period elapsed. As part of his representation of the IDOC defendants and in preparation for filing defendants' answer, defense counsel repeatedly stated his intent to confer with the IDOC defendants and review the relevant incident and disciplinary reports, which identify Lts. DeWayne Williams and Carr as the individuals who entered plaintiff's cell and engaged in the physical contact that underlies plaintiff's Eighth Amendment excessive force claim. As such, defense counsel knew, or should have known, that Lts. DeWayne Williams and Carr would be named as defendants. Furthermore, defense counsel's later relationship with these two Proposed Defendants gives rise to the inference that counsel would have had some communication with them regarding this action prior to the expiration of the notice period.

Multiple courts have found that prospective defendant government officials had constructive notice of the claims against them under circumstances that are analogous to this case. *See, e.g.*, *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (the City attorney – who represented the original City defendants and necessarily would have represented the newly-named officers – presumably investigated the allegations to answer the complaint on behalf of the original defendants thus giving the newly-named officers the requisite notice under Rule 15(c)); *Curry*, 2012 WL 1004894, at *4–5 (finding that new defendant had constructive notice where defense counsel had enough information accessible during counsel's routine preliminary investigation – including radio transmissions indicating that the new defendant encountered

plaintiff at the time he was assaulted – to put counsel on notice of the new defendant's liability); *Muhammad v. Pico*, No. 02 CIV.1052 AJP, 2003 WL 21792158, at *21 (S.D.N.Y. Aug. 5, 2003) (finding that Assistant Attorney General who appeared and litigated the case on behalf of the originally named defendants was on notice to prepare a defense for the unnamed new defendant who was "easily identifiable" from the records regarding the hearing at issue); *Mosley v. Jablonsky*, 209 F.R.D. 48, 53–54 (E.D.N.Y. 2002) (finding that law enforcement officers whose conduct formed the basis of plaintiff's allegations had constructive notice that they would be named as defendants when they were represented by the same attorney representing the erroneously named law enforcement agency").

Accordingly, this Court finds that Lts. DeWayne Williams and Carr had constructive notice prior to the expiration of the Rule 15(c)(1)(C) period under the "shared attorney" method.

> 2. **Lts. DeWayne Williams and Carr Knew or Should Have Known the Action Would Be Brought Against Them, but for a Mistake Concerning Their Identities.**

The final prong of the relation back analysis for Lts. DeWayne Williams and Carr turns on whether they "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Rule 15(c)(1)(C)(ii) permits an amendment to relate back to the original complaint "'where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake.'" *Worthington v. Wilson,* 8 F.3d 1253, 1256 (7th Cir.1993), *quoting Wood v. Worachek,* 618 F.2d 1225, 1230 (7th Cir. 1980)). To be a "mistake" for purposes of the Rule, there must be "some 'error, misconception, misunderstanding or erroneous belief' as to the proper party's identity, . . . or even an error caused by a typo." *Morris v. City of Rockford*, No. 3:20-CV-50384, 2022 WL 7498364, at *6 (N.D.Ill. Oct. 13, 2022),

13

*quoting Herrera*, 8 F.4th at 498. Whether plaintiff made a "mistake" within the meaning of Rule 15(c)(1)(C)(ii) is a question of law. *See, e.g., Smith v. Zettergren*, No. 1:18-CV-01924, 2021 WL 4502175, at *6 (N.D.Ill. Sept. 30, 2021).

Defendants argue that because Lts. DeWayne Williams and Carr were not named in the amended complaint, they could not have reasonably known that plaintiff would bring a case against them until their depositions in late-2022 or early-2023. (Dckt. #134 at 8–10). Defendants further argue there is no indication that plaintiff ever made a mistake as to the identity of Lts. DeWayne Williams and Carr, confused them for someone else, or attempted to name them as John Doe defendants. (Dckt. #134 at 9). Defendants suggest, it seems, that plaintiff made a deliberate choice not to sue Lts. DeWayne Williams and Carr. Not so.

Plaintiff's amended complaint shows that he intended to sue the IDOC officer(s) who participated in the infliction of alleged excessive force on him on July 2, 2019. In particular, plaintiff sued "Lt. D. Williams," the officer he thought entered his cell, maced him, and forcibly restrained him. Plaintiff's identification of his alleged assailant as "Lt. D. Williams" mistakenly created an ambiguity because IDOC employed two "Lt. D. Williams" at Stateville: Lt. Donald Williams and Lt. DeWayne Williams. Because of this mistake, Lt. Donald Williams – and not Lt. DeWayne Williams - waived service, answered the complaint, and admitted that he was present at plaintiff's cell on July 2, 2019.[11] Plaintiff – who alleges that he was maced in his face and roughly thrown to the ground before being handcuffed, (Dckt. #62 at 6) – also mistakenly believed that one officer (and not two – namely Lts. DeWayne Williams and Carr) were involved

---

[11] Defendants have not submitted a revised answer, and therefore continue to maintain that it was Lt. Donald Williams who appeared at plaintiff's cell on July 2, 2019, ordered plaintiff to stop flushing the toilet, and submit to mechanical restraint. (Dckt. #62 at 5). This is inexplicable. There is no reference to Lt. *Donald* Williams within the post-incident reports that were prepared by the IDOC staff with direct knowledge of the incident. Rather, as explained above, these reports make it clear that Lt. *DeWayne* Williams was the "Lt. D. Williams" who was involved in the July 2019 incident.

in the alleged use of excessive force. Plaintiff's mistakes about the identities of the officers who allegedly assaulted him are "mistakes" for purposes of Rule 15(c)(1)(C)(ii). *See Smith v. Zettergren*, No. 1:18-cv-0194, 2021 WL 4502175, at *5–6 (N.D.Ill. Sept. 30, 2021) (citing *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541, 548-50 (2010)) (holding that plaintiff made a "mistake" for purposes of Rule 15(c)(1)(C)(ii) where he intended to sue the officer who tackled him and hit him in the head but instead mistakenly sued the wrong officer).

Furthermore, there is ample circumstantial evidence to show that Lts. DeWayne Williams and Carr knew or should have known that they were the intended targets of plaintiff's excessive force claim after they received constructive notice of his lawsuit via the shared attorney doctrine. To reiterate, the contemporaneous IDOC records that were prepared by Lt. DeWayne Williams and other IDOC officers with knowledge of the July 2, 2019 incident identify Lts. DeWayne Williams and Carr as the two officers who were involved in the use of O.C. and force on plaintiff in his cell. Thus, Lts. DeWayne Williams and Carr knew, or should have known, that they would have been sued by plaintiff for excessive force but for his mistakes regarding the identity of his alleged assailants.

Once more, multiple courts have reached the same conclusion in cases with analogous facts. *See, e.g., Jacobsen*, 133 F.3d at 320; *Fraser v. Caribe*, No. 3:20-CV-00071(SVN), 2022 WL 1210720, at *8 (D.Conn. Apr. 25, 2022) ("Santiago, through his attorney, should have known that, but for Plaintiff's mistake, he would have sued originally."); *Smith*, 2021 WL 4502175, at *5; *Taite v. Fort Worth Police Dept.*, No. 4:12-CV-458-Y, 2014 WL 12695943, at *3 (N.D.Tex. Oct. 28, 2014) ("Here, the officers knew or should have known that, but for Taite's mistake concerning the identities of the arresting officers, an action would have been brought against them."); *Emmett v. McGuire*, No. 3:07-CV-0389-P, 2009 WL 10680004, at *4 (N.D.Tex.

15

Feb. 10, 2009) ("Officer Bromley in this case, is provided notice through the service of the complaint on the City Attorney and 'knew or should have known' that but-for the plaintiff's mistaken belief as to the identity of the offending officer, the action would have been brought against him.").

In sum: the court finds that the three-prong test for relation-back under Rule 15(c)(1)(C) is satisfied with respect to Lts. DeWayne Williams and Carr, and plaintiff's claim against them is timely because it relates back to the filing of his complaint.

### D. Plaintiffs' Proposed Amendment is Futile With Respect to Proposed Defendants Sgt. Johnson and Officers Anthony Taylor and Nate Finch Because the Claims Alleged Against Them in the SAC Do Not Relate Back to His Amended Complaint.

Plaintiff's effort to establish that his claim against Proposed Defendants Sgt. Johnson and Officers Anthony Taylor and Nate Finch relate back to his amended complaint under Rule 15(c) fails for two reasons.

First, these Proposed Defendants had no notice of the claim against them within the time period specified by Rule 15(c)(1)(C). In his proposed SAC, plaintiff alleges that Proposed Defendants Johnson, Taylor, and Finch violated his Eighth Amendment rights by standing "by without intervening or taking any action to assist [him] or stop the use of excessive force at the hands of Lt. Williams and Lt. Carr." (Dckt. #131-1, at 5). Plaintiff's amended pleading, however, makes no reference to a "failure to intervene" claim or to Proposed Defendants Johnson, Taylor, or Finch whatsoever. Nor was there any indication in the post-incident reports prepared by the IDOC officers that these Proposed Defendants even arguably engaged in any wrongful conduct towards plaintiff. Thus, there would have been no basis for defense counsel to believe that these three Proposed Defendants would have been sued by plaintiff but for a mistake by plaintiff and no basis for this Court to find that they had constructive notice of the claims

16

against them. *See, e.g., Mosley*, 209 F.R.D. at 53–54 (officer who was not alleged to have participated in the unconstitutional conduct alleged in the original complaint did not have constructive notice of a claim against him); *Houghtaling v. Eaton*, No. 14-CV-6416-EAW-JFW, 2017 WL 9517690, at *5 (W.D.N.Y. Sept. 29, 2017), *report and recommendation adopted*, No. 6:14-CV-6416 EAW, 2018 WL 522342 (W.D.N.Y. Jan. 22, 2018).

Second, there is no indication that plaintiff made a "mistake" within the meaning of Rule 15(c)(1)(C)(ii) when he failed to include these three Proposed Defendants in his amended complaint. Instead, the decision to add these Proposed Defendants appears to be a "tactical decision" by plaintiff "to expand the boundaries of the lawsuit" by adding a failure to intervene claim and this "does qualify as mistaken identity" for purposes of the Rule. *See McMurtry v. Wexford Health Sources, Inc.*, No. 18-CV-02176, 2021 WL 115102, at *12 (N.D.Ill. Mar. 26, 2021).

In sum: because plaintiff's failure to intervene claim against Proposed Defendants Johnson, Taylor, and Finch does not relate back to plaintiff's amended complaint under Rule 15(c), that claim is time-barred. Accordingly, the Court will deny plaintiff's motion to amend his complaint to the extent that he seeks to assert a failure to intervene claim against these Proposed Defendants because such a claim would be futile.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file his second amended complaint and add party defendants, (Dckt. #131), is granted in part and denied in part. Plaintiff is granted leave to file his second amended complaint against Lieutenants DeWayne Williams and Carr and he shall file the second amended complaint as a separate document on the docket.

Defendants are granted until October 18, 2024 to answer or otherwise plead in response to the second amended complaint.

**Date: September 27, 2024**

                                                                **Jeffrey I. Cummings**
                                                                 **United States District Court Judge**